**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CYNTHIA HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 08-863 |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.     Introduction

Plaintiff Cynthia Harris ("Harris" or "plaintiff") brings this action pursuant to 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g), seeking judicial review of the final determination of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, 1381-1383f.  Consistent with the customary practice in the Western District of Pennsylvania, the parties have filed cross-motions for summary judgment based on the record developed during the administrative proceedings.  (Doc. Nos. 8 & 10).

After careful consideration of the Commissioner's decision, the memoranda of the parties, and the evidence contained in the record, the Court finds that the decision of the Commissioner is not "supported by substantial evidence" within the meaning of § 405(g). Therefore, the Court will deny defendant's motion for summary judgment and grant the

plaintiff's motion for summary judgment. The ALJ's decision will be reversed, the Court will order an award of benefits, and remand for further proceedings.

## II.     Procedural History

Plaintiff protectively filed an application for DIB on February 1, 2005, and for SSI on February 13, 2005, alleging disability as of January 1, 2003, resulting from bipolar disorder, anxiety, hidradenitis suppurativa, and arthritis in the left knee. (R. 86-88, 134, 599-605). Plaintiff's claims were denied on initial review, and plaintiff requested a hearing. (R. 35-36, 63). A hearing was held before an Administrative Law Judge ("ALJ") on August 25, 2006, during which claimant was represented by counsel and appeared and testified. (R. 612-51). An impartial vocational expert ("VE") was also present and gave testimony. *Id.* By decision dated November 2, 2006, the ALJ denied plaintiff's claims. (R.37-50). Plaintiff requested review through the Appeals Council, which initially denied her request. (R. 78, 51-53). Subsequently, however, the Appeals Council remanded the case to an ALJ for consideration of additional evidence. (R. 54-56). A second hearing was held on August 24, 2007, before the ALJ in which plaintiff, who was represented by counsel, again appeared and testified. (R. 652-97). Additionally, a VE was also present and gave testimony. *Id.* Plaintiff is insured for DIB through March 31, 2010. (R. 16).

On January 30, 2008, the ALJ issued an unfavorable decision regarding plaintiff's claims, finding that plaintiff was able to perform a range of light work and that jobs suitable for plaintiff, considering her impairments, existed in the national economy.[1] (R. 13-28). The ALJ concluded,

---

[1]For purposes of the Act, work "exists in the national economy" if it "exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). "The ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

therefore, that plaintiff was not disabled under the Act.[2] *Id.*

On May 21, 2008, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. (R. 6-8). Plaintiff subsequently commenced this action against the Commissioner, seeking judicial review of the Commissioner's decision. Plaintiff and the Commissioner filed cross-motions for summary judgment on November 19, 2008. (Doc. Nos. 8 & 10). These motions are the subject of this memorandum opinion.

### III.  Statement of the Case

In his decision, the ALJ made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.

2.   The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 C.F.R. 404.1520(b) and 416.920(b)).

3.   The claimant has the following severe combination of impairments: hidradenitis suppurativa; degenerative joint disease of the knees; degenerative disc disease of the lumbar spine; fibromyalgia syndrome; perianal squamous cell carcinoma, status post excision and radiation therapy; obesity; and major depressive disorder, single episode, severe with psychotic features (20 C.F.R. 404.1520(c) and 416.920(c).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work;

_____

[2]An individual is considered to be "disabled" if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A); see also 42 U.S.C. § 423(d)(1)(A)(using almost identical language).

must have the ability to briefly (one to two minutes) change position at least every 30 minutes; can perform all postural movements on an occasional basis, except cannot climb ladders, ropes, scaffolds, stairs, or ramps; can perform no overhead work; can perform no more than occasional bending and no bending past 45 degrees; should perform no fast paced or assembly line work or work that requires the setting of workplace goals or more than occasional changes in the work setting; and is limited to jobs involving short and simple, one- to two-step instructions, no close concentration or attention to detail for extended periods, no work with the general public, and no close interaction with coworkers or supervisors.

6.    The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7.    The claimant was born on September 7, 1957 and was 45 years old on the alleged disability onset date, which is defined as a younger individual age 45-49.  Since attaining age 50 on September 6, 2007, the claimant is considered to be closely approaching advanced age (20 C.F.R. 404.1563 and 416.963).

8.    The claimant has a limited education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9.    The claimant's limitations preclude the transferability of any acquired job skills (20 C.F.R. 404.1568 and 416.968).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform (20 C.F.R. 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.   The claimant has not been under a "disability," as defined in the Social Security Act, from January 1, 2003 through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(R. 16-28).

### IV.    Standards of Review

Judicial review of  the Commissioner's final decisions on disability claims is provided by

statute.  42 U.S.C. §§ 405(g)[3] and 1383(c)(3)[4].  Section 405(g) permits a District Court to review

---

[3]  Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was

transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The District Court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,*

a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the District Court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .
     42 U.S.C. § 405(g).

[4] Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
     42 U.S.C. § 1383(c)(3).

402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a Court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the District Court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the District Court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he

6

grounds upon which an administrative order must be judged are those upon which the record

discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is

some "medically determinable basis for an impairment that prevents him or her from engaging in

any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d

775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the

claimant must show "he is unable to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is

entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential

evaluation process. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525.

The United States Court of Appeals for the Third Circuit summarized this five step process in

*Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is
> currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a
> claimant is found to be engaged in substantial activity, the disability claim will be
> denied. . . . In *step two*, the Commissioner must determine whether the claimant is
> suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails
> to show that her impairments are "severe", she is ineligible for disability benefits.

> In *step three*, the Commissioner compares the medical evidence of the
> claimant's impairment to a list of impairments presumed severe enough to
> preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer
> from a listed impairment or its equivalent, the analysis proceeds to steps four and

five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed

Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59;

*Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that the claimant suffers from a less severe impairment, he or she will be

deemed disabled where he or she is nevertheless unable to engage in "any other kind of

substantial gainful work which exists in the national economy . . . ."  *Campbell*, 461 U.S. at 461

(*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, the

plaintiff must first demonstrate the existence of a medically determinable disability that

precludes him or her from returning to his or her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at

59;  *Kangas*, 823 F.2d at 777.  Once it is shown that he or she is unable to resume his or her

previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given the

plaintiff's mental or physical limitations, age, education and work experience, he or she is able to

perform substantial gainful activity in jobs available in the national economy.  *Campbell*, 461

U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59;

*Kangas*, 823 F.2d at 777.

Vocational Expert - Hypothetical Questions

The determination of whether a claimant retains the RFC to perform jobs existing in the

workforce at step 5 is frequently based in large measure on testimony provided by the vocational

expert.  *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.

1984) (citations omitted).  Where a hypothetical question to the VE accurately sets forth all of a

claimant's significant impairments and restrictions in activities, physical and mental, as found by

the ALJ or as  uncontradicted on the medical record, the expert's response as to the existence of

jobs in the national economy which the claimant is capable of performing may be considered

substantial evidence in support of the ALJ's findings as to the claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to VEs).[5]  *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'").  Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); see also *id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)).  While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the United States Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony,

---

[5]Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

and failure to do so will necessitate a remand.  *Boone*, 353 F.3d at 206.

<u>Multiple Impairments</u>

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(c), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he or she must be found disabled if his or her condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits."

*Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but must set forth the reasons for his or her decision, and *specifically* explain why he or she found that the claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli* , 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes that the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to his or her past employment or perform other substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions. Instead, he or she must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not fully confirmed by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834

F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of his or her inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

If an ALJ concludes that the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could

13

reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount the claimant's pain *without contrary medical evidence*. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli*, 247 F.3d at 42-43 (although an ALJ may weigh conflicting medical and other evidence, he or she must give some indication of the evidence that he or she rejects and explain the reasons for discounting the evidence; where an ALJ failed to mention significant contradictory evidence or findings, the Court was left to wonder whether he considered and rejected them, or failed to consider them at

all, giving the Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . .  Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing Court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion  cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," on the

16

other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[6] Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they must always be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the

---

[6]Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the "treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[7] these Social Security Rulings provide that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length,

---

[7]SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to his or her past relevant work, and whether an individual is "disabled" under the Act.

frequency of examination, and its nature and extent), supportability by clinical and laboratory

signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based

upon a review of the medical record "are highly qualified physicians and psychologists who are

also experts in Social Security disability evaluation. Therefore, administrative law judges must

consider findings of State agency medical and psychological consultants or other program

physicians or psychologists as opinion evidence, except for the ultimate determination about

whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II

and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and

Psychological Consultants ("1. Findings of fact made by State agency medical and psychological

consultants and other program physicians and psychologists regarding the nature and severity of

an individual's impairment(s) must be treated as expert opinion evidence of nonexamining

sources at the administrative law judge and Appeals Council levels of administrative review. 2.

Administrative law judges and the Appeals Council may not ignore these opinions and must

explain the weight given to these opinions in their decisions.").

V.      Discussion

Plaintiff asserts that the ALJ improperly found that plaintiff is capable of performing light

work despite consultative medical source opinion evidence in the record that plaintiff is limited

to sedentary work.  Plaintiff contends that the ALJ substituted his own lay medical opinion for

"uncontradicted" evidence from the Commissioner's Consultative Examiner and State Agency

Reviewer, and that had the ALJ found plaintiff to be limited to sedentary work a finding of

19

"disabled" would have been compulsory under the Medical Vocational Guidelines. 20 C.F.R. Pt. 404, Subpart P, App. 2. Defendant's argument is simply that the ALJ's decision is supported by substantial evidence and therefore must not be disturbed on this review.

The ALJ's determination that plaintiff is not disabled within the meaning of the Act was premised on the finding that plaintiff is capable of performing a range of light work. The ALJ reached this conclusion despite the fact that the Commissioner's Consultative Examiner, Richard Hahn, M.D. ("Dr. Hahn"), reported that plaintiff could occasionally lift 2-3 pounds, could not carry anything at all, could stand and walk one hour or less per 8-hour workday, could perform limited pushing and pulling, could never perform bending, kneeling, stooping, crouching, balancing or climbing, and was likewise affected by environmental restrictions consisting of poor ventilation, heights, moving, vibration, temperature extremes, chemical exposure, wetness, dust, noise, fumes, odors, gases and humidity. The State Agency medical consultant, K. Loc Le, M.D. ("Dr. Le"), while relying on Dr. Hahn's report, limited plaintiff's ability to occasionally lifting or carrying 10 pounds, frequently lifting or carrying less than 10 pounds, standing or walking at least 2 hours in an 8-hour workday, sitting about 6 hours in an 8-hour workday, unlimited pushing and pulling, and occasionally climbing, stooping and crouching, but never balancing, kneeling or crawling. Dr. Le noted no environmental limitations. In addressing the opinions of Drs. Hahn and Le, the ALJ stated:

> As for the opinion evidence, considering the current evidence of record, the undersigned finds that the assessment submitted by Dr. Hahn on April 21, 2005(Exhibit 1F), and by the state agency medical consultant on May 31, 2005 (Exhibit 3F), finding the claimant limited to the performance of a range of sedentary work are not supported by the longitudinal record. As noted above, the consultative examiner had no x-ray evidence regarding the degree of arthritis in the

claimant's knees and the subsequent x-rays fail to support his report, which was apparently relied on by the state agency medical consultant, that the claimant had "really severe" arthritis in the right knee (Exhibit 1F). The record also fails to establish that the claimant had any ongoing swelling of the knees as was present at the time of the consultative examination. The undersigned finds that the longitudinal record fails to establish any continuous 12-month period after January 1, 2003, during which the claimant's physical impairments precluded her performance of the range of light work detailed above.

(R. 26).

The ALJ addressed plaintiff's complaint of knee and back pain as follows:

The claimant has also failed to document any ongoing treatment for her complaints of knee and back pain. Reports from the claimant's treating clinic establish that she did not start to receive treatment for complaints of left knee pain until October 12, 2004. X-rays at the time showed mild degenerative changes. The reports from the treating clinic present at the time of the prior hearing decision, dealing with treatment through June 21, 2005, document no further treatment for complaints of left knee pain and they document no treatment for complaints of back pain (Exhibit 5F). Of note, the claimant complained of no knee or back pain when seen for the consultative examination by Dr. Hahn on April 20, 2005. The claimant's knees were swollen and painful at the time of this examination and there was crepitus on range of motion. Range of motion of the knees was to 120 degrees bilaterally, with 150 degrees normal. The claimant had an antalgic gait, favoring the right knee. Dr. Hahn diagnosed the claimant as having arthritis in the knees, really severe on the right, with swelling and erythema that really limited her ability to walk. He also noted that the claimant's obesity (308 pounds) complicated the arthritis in the knees (Exhibit 1F). The undersigned notes that no x-rays were performed at the time of the consultative examination and that the degree of arthritis in the right knee reported by Dr. Hahn is inconsistent with the above-detailed mild degenerative changes reported on x-rays of the right knee performed on October 12, 2004 (Exhibit 5F).

The additional medical records submitted by the claimant dealing with treatment since the prior hearing decision establish that on October 26, 2006, the claimant was evaluated for complaints of low back pain, occasional numbness on the left shin and a history her knees buckling twice in the last two weeks. On examination, the claimant's gait was normal and she had full range of motion of the back. The claimant had

21

normal strength and sensation in the lower extremities and deep tendon reflexes were difficult to obtain in the patella due to body habitus. The claimant was diagnosed as having low back pain and morbid obesity (286 pounds at a height of 67.5 inches). The claimant was referred for x-rays, with x-rays of the lumbar spine performed on October 26, 2006, showing moderate osteoarthritic changes (Exhibit 14F). When seen for a follow-up examination on November 16, 2006, the claimant reported some improvement in her back pain with the prescribed Flexiril. The claimant denied having any numbness, tingling, or weakness in her lower extremities. On examination, the claimant had good strength and range of motion of the lower extremities and sensation was grossly intact. The claimant was advised to continue with physical therapy (Exhibit 14F).

(R. 23)

Under the regulations, light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. A job is also considered light work if it "requires a good deal of walking or standing," or "sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools." *Id*. Sedentary jobs are mostly performed while sitting, although "a certain amount of walking and standing is often necessary in carrying out job duties." *Id*. Based on this criteria, as the ALJ noted, the opinions of Drs. Hahn and Le limit the plaintiff to no more than sedentary work.

The evidence relied upon by the ALJ in discrediting the opinion evidence that plaintiff is capable of performing no more than sedentary work and is capable of performing the range of light work determined by the ALJ is the x-ray report of October 12, 2004. That report reads in its entirety: "INDICATION: Left knee pain. Mild degenerative changes. Negative for fracture or dislocation. Apparent small cystic like lucency in the proximal tibia may be small degenerative cyst. If there is continued concern for knee pathology or unexplained symptoms, additional

22

evaluation advised only if clinically indicated." However, this report contains no medical opinion that plaintiff is capable of performing the range of light work established by the ALJ. The determination that the x-ray report is inconsistent with the opinion that plaintiff is limited to sedentary work was founded upon the interpretation of the x-ray report by the ALJ himself. In fact, the record is devoid of a medical opinion that plaintiff is capable of performing work at a higher exertional level than that found by the consultative medical sources.

Furthermore, it is well established that state agency consultants are "highly qualified physicians . . . who are also experts in Social Security Disability Evaluation." 20 C.F.R. § 404.1527(f)(2)(I); SSR 96-6p. An ALJ can reject the opinion of a consultative examiner where the opinion is inconsistent with other substantial evidence of record. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). Here, however, the ALJ's reliance on his own interpretation of the x-ray report does not constitute substantial evidence, and therefore the ALJ's rejection of the consultative examiners' opinions on that basis constitutes reversible error.

Although the ALJ purports to base his decision on the medical evidence encapsulated in the longitudinal record, he impermissibly founded a crucial part of his decision upon his own medical opinion, even though incongruous with competent medical evidence in the record. This critical error determined the outcome of the case.

The Court finds that the ALJ did not provide sufficient countervailing evidence to justify the deviation from the opinion evidence offered by Drs. Hahn and Le. The ALJ is not free to independently review and interpret medical reports. See *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). It is by now axiomatic that an ALJ may not substitute his own lay medical opinion for competent medical opinion in the record. See *Morales v. Apfel*, 225 F.3d 310, 319

(3d Cir. 2000).

The Court finds that substantial evidence does not support the ALJ's decision that plaintiff is capable of performing a range of light work, and that the medical evidence of record supports a finding that plaintiff is limited to no more than sedentary work. Under Medical Vocational Guideline Rule 201.10, an individual (a) whose RFC is limited to sedentary work, (b) who is closely approaching advanced age (age 50-54), (c) who has a limited or less education, and (d) whose previous work experience was skilled or semiskilled but the skills are not transferable to other work, is presumed to be disabled. 20 C.F.R. Pt. 404, Subpart P, App. 2. Thus, it was only the finding that plaintiff is capable of performing a range of light work that prevented the rule from operating in plaintiff's case to make a finding that plaintiff is disabled. As stated above, the finding that plaintiff is capable of performing a range of light work is not supported by substantial evidence.

Because the Court determines that Medical Vocational Guideline Rule 201.10 is applicable to plaintiff's case, the Commissioner's decision is reversed and the Court will remand with instructions to award plaintiff benefits as of September 7, 2007, plaintiff's fiftieth birthday. A decision to direct the distribution of benefits is appropriate "when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

A remand for further proceedings is also necessary because the ALJ did not adequately consider the effect of the combination of plaintiff's physical and mental impairments. Rather, the ALJ analyzed each of plaintiff's impairments as though it existed in a vacuum. Despite

identifying the combination of impairments at step two, the ALJ's discussion at steps three, four and five of the sequential process fails to address the effect that plaintiff's impairments have in combination. The Court of Appeals for the Third Circuit has held that the social security regulations require multiple impairments to be considered in combination to assess severity. *Bailey v. Sullivan*, 885 F.2d 52, 61 (3d Cir. 1990); *see also* 20 C.F.R. § 404.1520. In making a disability determination, the ALJ is required to analyze the cumulative effect of all of the claimant's impairments. *See Plummer*, 186 F.3d at 428.

On remand the ALJ must determine if plaintiff is entitled to benefits for the period from January 1, 2003 until September 6, 2007, giving consideration to the effect that plaintiff's impairments have in combination, and further considering that plaintiff is limited to performing no more than sedentary work.

## VI.  Conclusion

Plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and the administrative decision of the Commissioner will be reversed and the case remanded with instructions that plaintiff be awarded benefits at least as of September 7, 2007. The ALJ also will determine plaintiff's eligibility for benefits for the period of January 1, 2003 until September 6, 2007, consistent with this opinion. An appropriate order shall issue of even date herewith.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:  All ECF registered counsel